CUYAHOGA COUNTY BAR ASSOCIATION *v.* BRITT.

[Cite as *Cuyahoga Cty. Bar Assn. v. Britt*,
109 Ohio St.3d 97, 2006-Ohio-1933.]

(No. 2005–2021—Submitted January 11, 2006—Decided May 3, 2006.)

---

**Per Curiam.**

{¶ 1} Respondent, Stephen Britt of Parma, Ohio, Attorney Registration No. 0042076, was admitted to the practice of law in Ohio in 1989.

{¶ 2} On February 7, 2005, relator, Cuyahoga County Bar Association, charged respondent with violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, including the parties' comprehensive stipulations, and made findings of misconduct and a recommendation, which the board adopted.

### Misconduct

{¶ 3} All of the charged misconduct arose from respondent's representation of a licensed practical nurse during 2003. The nurse had engaged respondent in July of that year to defend her against allegations that she had stolen prescription drugs from the long-term care facility where she worked. These allegations led to the nurse's termination, her indictment on theft charges, and review by the Ohio Board of Nursing of her license to practice.

{¶ 4} In a meeting with respondent and his employer in August of that year, the nurse discussed her pending criminal case and the administrative proceedings against her. She agreed to a $3,000 fee for respondent's representation, and over the succeeding several weeks, she paid $1,700 toward this fee. Respondent did not commit their fee agreement to writing.

{¶ 5} Respondent's client desperately wanted a hearing before the nursing board to explain the extenuating circumstances of her situation, including that she had confessed her theft to her employer. She also wanted to prove her rehabilitation and suitability to be restored to an unrestricted license. Thus, when the client received the nursing board's September 19, 2003 Notice of Opportunity for Hearing, she immediately advised respondent by telephone and personally delivered the notice to him. The notice advised the client that she could request a formal hearing, provided the request was made in writing no later than 30 days from the notice.

{¶ 6} Respondent did not file the hearing request, because, in the exercise of his professional judgment, he had decided that appearing before the nursing board would not advance his client's interests. Respondent failed, however, to

adequately communicate this conclusion to his client, and she, having heard nothing to the contrary, continued to expect that a hearing would be held on the status of her license. During the disciplinary proceedings, respondent explained this communication failure as a misunderstanding, and, looking back, he conceded that his client's expectation was reasonable under the circumstances.

{¶ 7} Respondent's client learned on November 19, 2003, that respondent had not requested a nursing-board hearing. She received a notice advising that, due to the lack of a formal hearing request, the board would consider her case ex parte at a meeting on November 20 and 21, 2003. The client alerted respondent, and he immediately asked for a delay of the board's deliberations, citing "mistake, inadvertence, [and] excusable neglect" as the cause for the failed hearing request. A representative of the nursing board later advised respondent that there were no provisions for a hearing without a proper request.

{¶ 8} The failure to request a hearing resulted in the indefinite suspension of the client's nursing license, an order from which she could not appeal. The indefinite suspension also carried certain restrictions. Even if the client's license is eventually reinstated, her practice would always be subject to conditions, including a prohibition against dispensing medication or supervising those who do.

{¶ 9} The client dismissed respondent for his neglect of her case before the nursing board. Prior to his dismissal, however, respondent successfully negotiated a resolution of the client's criminal case, obtaining treatment in lieu of conviction for her. The client has since successfully completed her treatment, and her criminal record has been expunged.

{¶ 10} On these facts, the panel and board found that respondent had failed to clearly define for his client the scope of his representation and to communicate his decisions on her behalf. As the parties stipulated, the client reasonably believed that respondent would protect her interests before the board by requesting the hearing to which she was entitled. The panel and board thus found that respondent had violated DR 6–101(A)(3) (prohibiting a lawyer from neglecting a legal matter), 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract for professional services), and 7–101(A)(3) (prohibiting a lawyer from intentionally prejudicing or damaging a client).

## Recommendation

{¶ 11} In recommending a sanction for this misconduct, the panel and board weighed the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 12} In mitigation, the panel and board found that respondent had no prior record of disciplinary action and that he had not acted with a dishonest or selfish motive. BCGD Proc.Reg. 10(B)(2)(a) and (b). Respondent had also cooperated fully in the disciplinary process. BCGD Proc.Reg. 10(B)(2)(d). The panel and board further commended respondent's performance on his client's behalf in her criminal case and accepted his expressions of remorse for his failings before the nursing board.

{¶ 13} In aggravation, the panel and board observed that respondent's client likely received a more severe sanction for her transgressions than she would have received had respondent timely requested a hearing before the nursing board. BCGD Proc.Reg. 10(B)(1)(h).

{¶ 14} Respondent and relator stipulated that a six-month suspension, with the entire period stayed on the condition that respondent commit no further Disciplinary Rule violations during the stayed suspension, was an appropriate sanction. The panel initially recommended that respondent receive a six-month suspension with a conditional stay. During board deliberations, however, the panel modified its recommendation, advocating instead a public reprimand. The board accepted this proposal and recommended that respondent be publicly reprimanded for his misconduct.

### Review

{¶ 15} We agree that respondent committed the cited misconduct, but we disagree with the board's recommended sanction. Instead, we adopt the panel's initial recommendation of a six-month stayed suspension, which both respondent and relator agreed was an appropriate sanction. Respondent's contrition, remedial efforts, and expressed devotion to the legal profession all suggest that he will never repeat the serious mistake that he made in this case, but we conclude that a stayed suspension will help to protect the public by ensuring that respondent will conscientiously comply with all of his ethical obligations during the suspension period.

{¶ 16} Accordingly, respondent is hereby suspended from the practice of law in Ohio for six months, with the entire suspension stayed provided that respondent commit no further misconduct during the suspension period. If respondent violates this condition, the stay will be lifted, and respondent will serve the entire six-month suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, O'CONNOR and LANZINGER, JJ., concur.

PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., would publicly reprimand respondent.

Rapoport, Spitz, Friedland & Courtney and Michael M. Courtney; Anthony J. Vegh; and Ellen S. Mandel, Bar Counsel, for relator.

Harrington, Hoppe & Mitchell, Ltd., and Patrick K. Wilson, for respondent.